Argued February 5, affirmed September 8, 1965

# RELOS *v.* COLEMAN ET AL

405 P. 2d 540

*Duane Vergeer,* Portland, argued the cause for appellant. On the briefs were Vergeer & Samuels and Thomas Cavanaugh, Portland.

*Leo Levenson,* Portland, argued the cause for respondents. With him on the brief were Kobin & Meyer, Norman B. Kobin, Randall S. Jones, and Walter H. Evans, Portland.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

## GOODWIN, J.

One of two principal stockholders sued the other, and the corporation formed by them, seeking a redistribution of the shares. From a decree denying relief, plaintiff appeals.

The parties will be referred to by their last names.[1] The plaintiff, Relos, seeks to impose a constructive trust upon certain shares of stock held or controlled

---

[1] Harry E. Coleman was named as a party defendant, but has no interest in this appeal.

by Coleman, and seeks to have the issuance of certain other shares held or controlled by Coleman declared void. The trial court denied the specific relief sought, and also denied any other relief that might have been available under the general equitable prayer.

Relos and Coleman agreed in 1959 to form the corporation to construct a forty-four unit motel. Relos agreed to provide the land. Coleman, an experienced motel builder, agreed to obtain mortgage financing, and to furnish business management during the construction period. The parties agreed that each would own one half of the capital stock.

Relos subsequently negotiated for additional land adjacent to the tract which he had originally agreed to contribute. He then obtained Coleman's consent to expand the plans to provide for a sixty-four unit motel. Still later, the parties found that they could obtain more land, and expanded their plans to provide for an eighty-four unit motel with restaurant and lounge. Both parties contributed equally to the purchase of the two tracts of additional land.

The enlargement of the project made it necessary for the corporation to obtain additional money for construction. This need was met in part by additional mortgage loans. Near the end of the construction stage, each of the parties contributed money to the corporation for the removal of liens.

The current litigation grew out of a dispute over the money furnished by Relos. Relos contends that he contributed more than Coleman. Relos asserts that he is entitled to stock in exchange for his contributions. He says he should now be the majority stockholder. Coleman contends that the cash contributions of both parties were approximately equal, and that

in any event funds not specifically paid on stock subscriptions were loans.

■ At the time of the trial, Relos and Coleman each owned or controlled 63 shares of stock. The remaining 14 shares[②] were held by individuals who responded at shareholders' meetings to Coleman's desires. The practical result of this state of affairs was that, while Relos and Coleman were equal in ownership, Coleman controlled the corporation. The transcript reveals that this fact is the primary source of the present difficulty between the parties.

The trial court held that, except for certain transactions clearly treated by the parties as stock subscriptions, and for which shares were issued, the other payments by Relos and Coleman were loans. This conclusion, which we deem to be correct, bars any redistribution of the equity in the corporation.

The parties had agreed to start the project as equal owners, doing business by means of a corporation. The trial court found insufficient evidence that the essential nature of their agreement had changed. While the records are incredibly deficient in important particulars, it was possible for accountants to trace the status of the shareholders' accounts. We concur in the trial court's view of the evidence. Whether or not the contributions by the two principal shareholders are exactly equal, there is no basis for redistributing the shares.

There is no evidence of fraud, secret profits, or covert dealings that would warrant the imposition of a constructive trust upon the shares in the hands of

---

[②] The fourteen shares held by minority shareholders were taken equally from the shares that otherwise would have been issued to Coleman and Relos. These shares were issued to the managers of the restaurant and bar in order to obtain their participation in the venture.

one shareholder in favor of the other. Cases cited by the plaintiff in support of the use of a constructive trust to adjust the equities where there has been iniquitous conduct are not, therefore, in point.

■ Relos says that even in the absence of an agreement to change the proportionate ownership, the court should change the distribution of the shares because of the alleged disparity of the contributions of the parties. None of the authorities cited support such a proposition.

We are satisfied from the evidence that the parties intended to adjust their accounts from time to time so that their contributions of cash would remain substantially equal. There is no reason to believe that this intent cannot be carried out.

■ Relos argues that Coleman, despite the original contract between the parties, tried to withdraw from the venture, and expressly repudiated the agreement. Relos contends that this repudiation entitles him to treat the original agreement as a dead letter and to have the shares reapportioned in equity as if there had never been a contract between the parties. We do not believe the record proves the asserted repudiation. At most, Coleman may have expressed some second thoughts about the contract. We have been cited to no authority for this court to rewrite the agreement of the parties when one of them expresses to the other his dissatisfaction with the amount of money needed to keep the venture afloat.

■ Finally, Relos argues that Coleman did not meet the terms of the subscription for shares that he received after a decision by the shareholders to issue additional stock to shareholders who would lend the corporation $1,000 for every share subscribed. There was evidence from which the trial court could have

found that Coleman did meet the terms of the stock subscription, and we have found no reason to conclude otherwise. Accordingly, a prayer that the issue of certain stock to Coleman be declared void was properly denied.

Affirmed.